**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No.  4:18-CR-381 SNLJ/PLC |
| ) | |
| **DIANTE TURMAN,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court following a hearing on Defendant's Motions to Suppress Physical Evidence [ECF No. 31] and Statements [ECF No. 30].  Defendant contends that Defendant's Fourth Amendment rights were violated because: (1) the traffic stop lacked probable cause; (2) the search of his vehicle was based on "false claims," lacked probable cause, and was not based on officer safety or consent; (3) the search of his house was not based on uncoerced consent by either Defendant or his wife;[1] and (4) Defendant's statements were not voluntary and were the result of an unlawful arrest.[2]

---

[1] Neither Defendant's pre-hearing nor post-hearing memoranda in support of his motions to suppress evidence and statements contain any discussion or citation to authority with respect to items seized from Defendant's house.  More specifically, Defendant's authority is directed entirely to the legitimacy of the traffic stop and the scope of the vehicle search [ECF Nos. 32 and 55].  The pretrial order states as follows: "Each motion to suppress must also include a memorandum of law setting forth the specific legal ground upon which it is contended that any such item of evidence was unlawfully obtained, with citations to authority."  Because Defendant failed to cite a "specific legal ground" (outside of authority related to the traffic stop and accompany legal arguments), the Court declines to consider the bare conclusory statements contained in the motion to suppress regarding the search of and items seized from Defendant's house.

[2] Defendant filed a "Consolidated Memorandum" in support of his motions to suppress evidence and statements.  The Consolidated Memorandum does not provide either legal authority or argument for virtually any of the conclusory bases for suppression referenced in the Motion to Suppress Statements, including: (1) failure to timely present to a magistrate; (2) duration and

**Factual Background**

The Government offered the testimony of Detective Eric Schlueter.  Detective Schlueter is employed as a detective for the Florissant Police Department.  At the time of his testimony, he had worked for the Florissant Police Department for five years.

On March 19, 2018, around 8:00 p.m. Detective Schlueter was patrolling in an unmarked Ford Explorer in the area of Humes Road and Patterson in Florissant.  Detective Schlueter stated that a Suburban was in front of him on Humes Lane and turned right on to Patterson Road without signaling.  The Suburban accelerated on Patterson Road and Detective Schlueter followed it.  As the Suburban turned onto Lindbergh, Detective Schlueter activated his lights and stopped the Suburban.

Detective Schlueter exited his vehicle and approached the Suburban.  He noted three passengers.  Defendant sat in the driver's seat.  Defendant's wife occupied the front passenger seat and his son occupied the back seat.

Detective Schlueter explained that he stopped the vehicle because of a failure to signal and a high rate of speed.  Defendant responded that he was late for a concert and that it was his wife's birthday and they were trying to get to the concert on-time.  While speaking to Defendant, Detective Schlueter noticed Defendant was nervous and "his hands were shaking

---

nature of custody and interrogation; (3) physical duress; (4) failure to advise of Miranda rights; and (5) unlawful arrest without warrant.  The Consolidated Memorandum provides legal authority for two arguments: (1) pretexual traffic stop; and (2) unlawful search of Defendant's vehicle.  The final sentence in Defendant's Consolidated Memorandum states as follows: "The drugs and firearms allegedly recovered from Diante Turman's vehicle were obtained as a result of an illegal search and thus must be excluded." [ECF No. 32].  Defendant's post-hearing Memorandum of Law [ECF No. 55] in connection with the suppression of his statements appears to rely on a "poisonous fruit" argument that was not asserted in either the Motion or Consolidated Memorandum.  To the extent Defendant argues that his statements were the product of the allegedly unlawful traffic stop and search of the vehicle, the Court addresses these arguments below.

2

uncontrollably." Detective Schlueter also testified that Defendant's forehead was "beading with sweat." In addition, Detective Schlueter "detect[ed] an odor of burnt marijuana in the car."

Detective Schlueter asked Defendant about the smell of marijuana. Defendant stated that a friend had earlier smoked in the car. Based on Defendant's demeanor and the smell of marijuana, Detective Schlueter asked Defendant and his family to exit the vehicle. Detective Schlueter patted down the family. None of the occupants had weapons on their person.

Following the arrival of a second officer, Detective Schlueter searched Defendant's vehicle. Upon opening the driver's side door, Detective Schlueter observed carpet "protruding" on the side of the center console. Detective Schlueter pulled the plastic panel and a "dress sock fell that was concealed behind the panel." Inside the dress sock, Detective Schlueter discovered several plastic baggies that he believed were "suspect narcotics." After seizing the suspect narcotics, Detective Schlueter arrested Defendant. Detective Schlueter also located in the front passenger seat a nine millimeter Smith & Wesson firearm in plain view in Defendant's wife's open purse.

Following the search of the passenger area, Detective Schlueter searched the tailgate area of Defendant's vehicle. Observing a disturbance in the plastic paneling on the driver's side of the tailgate area, Detective Schlueter lifted up the loose paneling and located a second firearm - - a Springfield XD, nine millimeter that was loaded. Subsequent to the search of the vehicle, Detective Schlueter "ran" Defendant's name and learned that he was a convicted felon.

Detective Schlueter conveyed Defendant and his wife to the Florissant Police Department, approximately a mile and a half from the location of the traffic stop. A different officer drove Defendant's son to the Florissant Police Department. Both Defendant and his wife were placed in interview rooms and Defendant's son was placed in the "roll call room."

Detective Schlueter read Defendant his Miranda rights in the interview room.  Defendant did not request an attorney but initially declined to make a statement asking for time to "think over his situation."  Detective Schlueter also read Defendant's wife Miranda rights.  Defendant's wife signed a Florissant Police Department waiver form at 9:00 p.m. and agreed to speak with Detective Schlueter and another Florissant police detective.  The statement was not recorded.

According to Detective Schlueter, Defendant's wife stated that the vehicle that Detective Schlueter pulled-over belonged to her.  She had no knowledge of the narcotics located in the car.  She stated that the firearm in the purse belonged to her and that her husband was a convicted felon who had advised her to purchase the firearm for their protection.  She advised she had no knowledge of the other firearm located in the cargo area.

Detective Schlueter asked if there were additional firearms or narcotics at the house and she responded "there could be."  Detective Schlueter then presented Defendant's wife with a consent to search and seize Form.  The Form contains a space for a name and Defendant's wife wrote her name.  Detective Schlueter filled-in the address: 1615 Jackson Lane.  The Form provides three officers - - Schlueter, Osmer and Edwards - - permission to search 1615 Jackson Lane and "seize and/or take" items believed to be "evidence, contraband or stolen property."  The Form informed Defendant's wife that she had the right to an attorney and contained a statement, which Detective Schlueter read to Defendant's wife that "[t]here have been no threats, promises or coercion used against me in order to have me give permission and sign this statement."

Following execution of the consent to search, Detective Schlueter and three other detectives drove Defendant's wife and son to 1615 Jackson Lane.  The house was secured with an electronic keypad and Defendant's wife used a code to unlock the front door.

4

Once inside the house, one detective sat in the living room with Defendant's wife and son while Detective Schlueter and another detective searched the house. Detectives located a SIG saver and nine millimeter firearm in the master bedroom in a closet. Detectives also recovered ammunition and pistol holders from the master bedroom. Detectives also searched a mudroom/laundry room attached to the garage and seized a hotplate, measuring devices, glass containers with white residue and a glass jar with white powder. Inside cupboards in the mudroom/laundry room, detectives located additional ammunition and a large capacity drum magazine. Detectives also seized an AR-15 rifle leaning against a wall of the mudroom/laundry room.

In addition, detectives searched Defendant's garage and observed a black suitcase. Inside the suitcase were two plastic-wrapped dark bundles. Detective Schlueter cut a black bundle, revealing layers of plastic wrap, aluminum foil, white powder and a "leafy, green substance believed to be marijuana…."

Following the search of Defendant's home, detectives returned to the Florissant Police Department with Defendant's wife and son. Detective Schlueter requested that Defendant's wife complete a written statement regarding the items seized from her home. Defendant's wife agreed to complete a statement and she did so at approximately 1:00 a.m. on March 20. In the written statement, which contained pre-typed sections on the right to counsel and voluntariness that Detective Schlueter read to Defendant's wife, she denied knowledge of the narcotics seized from her home and the weapons other than the one in her purse. Defendant's wife also described the circumstances of the traffic stop, including that she asked Detective Schlueter why he pulled over the family and asked for an I.D. from both adults. Defendant's wife acknowledged that after Detective Schlueter stated "the car smelled like weed," she responded that she "never smelt

5

any weed when I entered the car." In the statement, Defendant's wife also stated that: "I'm hardly even ever in that car at all." Defendant's wife stated in the statement that she wondered whether Defendant had another family.

Shortly after writing her statement, Defendant's wife and son exited the Florissant Police Department station. Detectives then escorted Defendant to the booking area and he was charged with possession of the seized items.

Around 11:00 a.m. on March 20, Detective Schlueter again interviewed Defendant. Defendant was advised of his Miranda rights a second time. Defendant agreed to speak with the detectives and did not request an attorney. In the conversation, Defendant stated that the firearms located in the rear of his vehicle and his home belonged to him, as well as the narcotics in his vehicle and in his home. Defendant also offered to "work in an official capacity" with the Drug Enforcement Administration (DEA). A Florissant detective, Sergeant Mocca, contacted a DEA agent and Detective Schlueter contacted a different DEA agent, who met with Defendant shortly after the agent was contacted.

Detectives Mocca and Schlueter obtained a recorded statement from Defendant following administration of Miranda rights. In the recorded statement, Defendant acknowledged he was "a convict," knew he was not permitted to possess a firearm and recapped his earlier description of his role in the sale of narcotics.

### Lawrence O'Toole

The Government offered the testimony of Lawrence O'Toole, a Task Force officer for the DEA and an employee of the St. Louis Metropolitan Police Department. Officer O'Toole and DEA Special Agent Mike Carnucci interviewed Defendant at the Florissant Police Department on March 20, 2018. The agents first advised Defendant of his Miranda rights. Defendant did not

6

request an attorney.  Defendant provided a voluntary statement to the DEA agents.[3]

## Dareonte Turman

Defendant offered the testimony of his fourteen year-old son, Dareonte Turman. Defendant's son testified that on March 19, 2018, Defendant, his wife and son planned to attend a gospel concert for Defendant's wife's birthday.  Defendant picked-up his son from a Boy's Club around 5:45 p.m. and transported him home.  Defendant's son did not detect a marijuana odor in Defendant's car.[4]

Defendant's son stated that the family left for the concert around seven, but shortly returned home to retrieve Defendant's wife's cellphone.  As the family headed home, Defendant's son heard Defendant remark that someone was following them.  After retrieving the cellphone, the family resumed their trip to the concert.  Defendant's son testified that at the intersection of Humes and Patterson, he heard the "ticking" sound of an indicator signal and saw a flashing right arrow.

At some point, a police officer stopped the family's car.  At first, the police officer said nothing about the smell of marijuana.  However, after returning a second time to the car, the officer said "it smells like marijuana."  Defendant's son did not recall whether Defendant stated that someone else had earlier smoked marijuana in the car.  In addition, Defendant's son did not see Defendant's hands shaking or beads of sweat on his forehead.  At some point, Defendant's son was outside of the car with his mother and observed officers searching and "looking at things."

Following the stop, an officer transported Defendant's son to the police station.  He was

---

[3] At the hearing, the parties agreed to refrain from disclosing the details of Defendant's conversation with the DEA agents.
[4] Defendant's son stated that he recognized the smell of marijuana because he had attended school presentations on drug education.

placed in a waiting room and watched Transformers.  Later in the evening, Defendant's son and Defendant's wife left the police station and returned home.  Defendant's son sat on a couch at his home while police officers searched the house.  Defendant's son recalled that an officer asked Defendant's wife to compose a written statement and threatened her with jail, among other things.  Defendant's son also stated that Defendant had a shoebox with money in it and, after the police officers searched the house and Defendant's son and wife returned a second time to the house, the shoebox was empty except for rubber bands.

### Diamon Turman

Diamon Turman, Defendant's wife, testified to the events of March 19, the date of her birthday.  She stated that the plans for her birthday included attending a gospel concert by the performer, Lecrae.

The family departed from their home on Jackson Avenue around 7:15 p.m.  On an adjacent street, Splendor, Defendant noticed a small parked SUV and commented on it.  After travelling a few minutes, Defendant's wife realized her cellphone was at her home and Defendant made a U-turn on Splendor to return to the home.  The small SUV followed Defendant's car on Splendor but did not turn on to Jackson.  Later, after Defendant resumed travelling to the concert, he noticed the small SUV following him on Humes Avenue.

At the corner of Humes and Patterson, Defendant turned right on to Patterson. Defendant's wife recalled that she heard a clicking noise and saw a "flashing red light on the mirror."  Defendant's wife denied that Defendant was speeding on Patterson asserting that "we knew someone was following us."

At Lindbergh and Patterson, Defendant turned right.  At that point, police officers pulled Defendant over in a shopping center plaza.  Defendant's wife stated that the time was

8

approximately 7:40 P.M. and the family was late for the concert.

An officer, identified as Detective Schlueter, approached the car and asked Defendant and his wife for a driver's license. Defendant's wife asked why Defendant was pulled over and the officer stated "due to failure to signal." Both Defendant and his wife replied that Defendant used the blinker.

The officer asked Defendant to step out of the vehicle. At that point, Defendant's wife stated that she turned her cellphone on record.[5] When Detective Schlueter returned to the car, the recording establishes that he stated that the car smelled like "weed" and that Defendant's wife disagreed. The recording also confirms that Detective Schlueter stated to Defendant's wife that Defendant had told him that a "buddy" of Defendant's smoked marijuana in the car.

Police officers eventually transported Defendant's wife to the Florissant Police Station. Defendant's wife was placed in a small room. At some point, Detective Schlueter talked to Defendant's wife about "coming to [her] house." In connection with the discussion, Detective Schlueter provided her with a piece of paper containing rights. Defendant's wife stated she requested an attorney and Detective Schlueter denied her request. Another Florissant police officer participated in the discussion, stating that if Defendant's wife did not cooperate, "they were going to get a search warrant for my house regardless."

Defendant's wife signed the consent to search form, believing she "had no other choice." She confirmed that the paper she signed contained Miranda rights and the statement that she did not want a lawyer. Defendant's wife asserted that she signed the "paper" because she was scared and nervous and wanted to go home.

Defendant's wife also wrote two statements, one at home and one at the police station

---

[5] Portions of the recording were played in the courtroom. The undersigned listened to the entire recording.

9

following the search. In both statements, she denied knowing about any guns or drugs connected to Defendant.

The Government cross-examined Defendant's wife and established that she worked as a real estate agent and consultant and dealt with contracts and "fine print" every day. Defendant's wife also explained that she had worked previously for the State of Missouri in the area of foster home licenses and case management - - jobs that involved paperwork.

## Discussion

### A. Motion to Suppress Physical Evidence

1. Traffic stop/probable cause

Defendant contends that the traffic stop was a pretext for an unlawful search of Defendant's vehicle. More specifically, Defendant contends that the "Government has failed to prove by a preponderance of the evidence that [a] traffic violation actually occurred." [ECF No. 55].

It is well-settled that "any traffic violation, regardless of its perceived severity, provides an officer with probable cause to stop the driver." United States v. Jones, 275 F.3d 673, 680 (8th Cir. 2001) (emphasis in original). See also, United States v. Mullani, 334 F.3d 765 (8th Cir. 2003). An officer's subjective motivations for stopping a vehicle are not relevant "even if the officer conducted a valid traffic stop as a pretense for investigating other criminal activity." United States v. Hambrick, 630 F.3d 742, 746 (8th Cir. 2011). If the officer has a right to stop a driver, the officer may "conduct an investigation 'reasonably related in scope to the circumstances that justified the interference in the first place.'" United States v. Bloomfield, 40 F.3d 910, 915 (8th Cir. 1994) (en banc) (quoting United States v. Cummins, 920 F.2d 498, 502 (8th Cir. 1990)). "This reasonable investigation includes asking for the driver's license and

10

registration, requesting that the driver sit in the patrol car, and asking the driver about his destination and purpose." Id. "Moreover, 'if the responses of the detainee and the circumstances give rise to suspicions unrelated to the traffic offense, an officer may broaden his inquiry and satisfy those suspicions.'" United States v. Johnson, 58 F.3d 356, 357 (8th Cir. 1995) (quoting United States v. Barhorn, 990 F.2d 412, 416 (8th Cir. 1993)).

Detective Schlueter testified that he stopped Defendant's car for failure to signal and speeding. Defendant's wife and son testified and denied each of Detective Schlueter's reasons for stopping the family's car.

With respect to the categorical denials of Defendant's wife and son, they clearly have a personal interest in the outcome of the case and they candidly acknowledged their dependence on Defendant and their desire for Defendant's return to their home. It is, however, implausible that two passengers in a vehicle driving for some time through a residential area would accurately recall the driver's use of a turn signal on one particular occasion. Moreover, Defendant's son was unable to recall the names of the streets in the neighborhood or how many streets the family turned on before they were stopped. Nor is it credible under the circumstances that Defendant's son and wife would be closely monitoring the speed of the car. Finally, the evidence is undisputed that the family was late to a concert for Defendant's wife's birthday celebration.

Defendant contends that "the Government's case for denial of Defendant's motions rests entirely on the credibility of one person, Schlueter…." Defendant argues that Detective Schlueter had a motive to lie about the reason for the traffic stop. However, Defendant has not provided any persuasive reason for Detective Schlueter to do so.

In attacking the credibility of Detective Schlueter, Defendant claims that Detective Schlueter's presence in Defendant's neighborhood prior to the stop is evidence that the reasons

11

provided for the stop are fabricated. Detective Schlueter acknowledged that he was patrolling the neighborhood prior to the stop and the neighborhood had experienced both a homicide and illegal narcotics sales. However, as noted above, even if Detective Schlueter was suspicious of Defendant, an otherwise valid traffic stop is not unconstitutional due to the officer's pre-stop suspicions regarding the vehicle. See also Cummins, 920 F.2d at 501; United States v. Fuehrer, 844 F.3d 767, 772 (8th Cir. 2016) (citation omitted), cert. denied, 137 S. Ct. 2107 (2017) ("once an officer has probable cause, the stop is objectively reasonable and any ulterior motivation on the officer's part is irrelevant.")

Interestingly, a case Defendant relies rather heavily on, United States v. Botero-Ospina, 71 F.3d 783 (10th Cir. 1995) (en banc), rejects precisely the argument made here. In Botero-Ospina, the officer observed a traffic violation - - lane straddling. Id. at 785. In affirming denial of the suppression motion, the court held:

> [It is] irrelevant that [the officer] may have harbored a secret hope of finding evidence of drug trafficking. Because the deputy had reasonable articulable suspicion that a traffic violation had occurred or was occurring, the stop did not violate the Fourth Amendment and we need inquire no further into the circumstances surrounding the stop.

Id. at 788.

Detective Schlueter's testimony at the hearing was largely consistent with the available documentary evidence and the recording made by Defendant's wife. Defendant's wife's cellphone recording, which Defendant claims is proof that Detective Schlueter "deliberately lied to the Court," establishes that the family was treated respectfully. Detective Schlueter answered the family's questions in a business-like manner and did not appear to threaten or abuse any member of the family. Based upon the totality of the record, the Court finds Detective Schlueter's description of the events of March 19 to be more credible than those of Defendant's

12

wife and son.  Accordingly, the Government established sufficient probable cause for the initial traffic stop.

    2. Search of the car/probable cause

Defendant contends that the search of Defendant's automobile constituted an unlawful expansion of the initial traffic stop without probable cause.  The Government argues that the smell of marijuana evident when Detective Schlueter initially engaged Defendant while he was seated in his car, provided separate probable cause to search the vehicle.

While speaking with Defendant following the initial stop, Detective Schlueter observed that Defendant was shaking and sweating.  Detective Schlueter also detected an odor of burnt marijuana.  According to Detective Schlueter, Defendant conceded the presence of a marijuana odor but blamed it on a friend who had earlier ridden in the car.

With respect to the nervous behavior, it is certainly more plausible than not that Defendant exhibited conduct consistent with nervousness based on the fact that the vehicle contained narcotics and multiple weapons and Defendant was a convicted felon.  The evidence also supports a finding that Detective Schlueter smelled and mentioned burnt marijuana.  The cellphone recording Defendant's wife made during the traffic stop confirms that Detective Schlueter and Defendant's wife discussed the smell of marijuana.  Defendant's wife also conceded in her statement that Detective Schlueter asked about the smell of marijuana.  Moreover, Defendant and Detective Schlueter were together outside of the presence of Defendant's wife and son when, Detective Schlueter testified, Defendant blamed the odor of marijuana on a friend.  The Court finds Detective Schlueter's testimony credible and supportive of both the continuation of the stop and search of the vehicle.

Defendant relies on several cases, including Knowles v. Iowa, 525 U.S. 113 (1998), in

support of his position that the initial stop was unlawfully expanded without probable cause. In Knowles, an officer stopped the defendant for speeding. Id. at 114. The police officer issued the defendant a citation and then conducted a full search of the car. Id. Under the driver's seat, the officer found marijuana. Id. The Supreme Court concluded that the issuance of a citation for speeding is an insufficient basis for a full search of a car. Id. More specifically, under the circumstances present in Knowles, the two "historical rationales for the 'search incident to arrest' exception: (1) the need to disarm the suspect in order to take him into custody, and (2) the need to preserve evidence for later use at trial" did not justify the search. Id. at 116-17.

    The distinction between this case and Knowles, and indeed the other cases Defendant relies on, is that here it is the odor of marijuana rather than the traffic violations alone that establishes the probable cause to conduct a search of Defendant's car. In United States v. Landfair, 207 F.3d 521 (8th Cir. 2000) (per curiam), the Eighth Circuit considered the relevance of Knowles in circumstances nearly identical to the present case. A police officer pulled the defendant over for speeding and, as the officer approached the car, he smelled marijuana. Id. at 522. The officer subsequently searched the front compartment of the car and discovered a package of cocaine base. Id. The defendant filed a motion to suppress and a magistrate judge recommended denial. Id. The district court accepted the recommendation, concluding that under all the circumstances probable cause existed to search the defendant's automobile. Id. In affirming the district court, the Eighth Circuit concluded that the totality of circumstances, including the "odor of marijuana coming from the interior of the automobile," provided probable cause to search the vehicle. Id. at 522-23. Moreover, the court expressly found Knowles inapplicable stating "[the police officer] searched the vehicle based upon a determination of

14

probable cause, not as an incident to his issuance of traffic citations." Id. at 523.[6]

Defendant relies on United States v. Beck, 140 F.3d 1129 (8th Cir. 1998) for the proposition that Defendant's nervousness was an insufficient basis for extending Defendant's detention and conducting a search of his car. In Beck, the court discounted each of the government's bases for the defendant's "renewed detention" following a legitimate traffic stop. With respect to "nervousness," the court concluded that under the particular circumstances "any suspicion associated with [the defendant's] nervous demeanor during the traffic stop [was], at best, minimal." Id. at 1139.

Beck is distinguishable from this case. In Beck, nervousness was associated with other factors that the court concluded were not inherently suspicious, such as visible fast food trash, driving of a rental car, and travel from California.[7] Id. at 1137-39. Here the nervousness accompanied the smell of marijuana. Because the Eighth Circuit has repeatedly held that the smell of marijuana justifies a further detention following a stop for a traffic violation, the sometimes minimal significance accorded nervousness does not require suppressing the items seized in the search of Defendant's car here. See United States v. Smith, 789 F.3d 923, 928 (8th Cir. 2015) ("This court has held numerous times that the smell of marijuana coming from a vehicle during a proper traffic stop gives an officer probable cause to search for drugs."); see

---

[6] The Court declines to consider the reasonableness of the length of the traffic stop. As Defendant states, "[i]n Illinois v. Caballes, 543 U.S. 405 (2005), the Supreme Court held that a seizure justified solely by the interest in issuing a ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete the drafting and delivery of a traffic citation." In this case, however, the officer extended the traffic stop due to the circumstances, including initially a smell of burnt marijuana.

[7] More recently, the Eighth Circuit has held that travel on a known drug route, one-way rental of a car and nervousness provided "particularized, objective facts" that justified reasonable suspicion and provided a permissible basis for expanding a traffic stop. United States v. McCarty, 612 F.3d 1020, 1025 (8th Cir. 2010).

15

also <u>United States v. Woods</u>, 829 F.3d 675, 680 (8th Cir. 2016) (extension of a traffic stop was justified by several factors, including the officer's "detect[ion of] the odor of marijuana in [the] vehicle"); <u>United States v. Gerard</u>, 362 F.3d 484, 489 (8th Cir. 2004) (noting that other circuits have held the odor of marijuana is alone sufficient to support probable cause); <u>United States v. Gipp</u>, 147 F.3d 680, 685 (8th Cir. 1998) ("Many lower courts have relied primarily on the odor of marijuana in determining that probable cause existed for a warrantless automobile search") (internal quotation marks omitted)).

Defendant also contends that the scope of the search of Defendant's vehicle exceeded permissible parameters. More specifically, Defendant contends that neither a "search incident to arrest" nor the "automobile exception" justified a search of the passenger compartment of Defendant's car. As an initial matter, the Government has not claimed that the search of Defendant's car was incident to Defendant's arrest. Rather, the Government contends that the purpose of the search was to determine whether the vehicle contained narcotics.

Both the Government and Defendant cite <u>United States v. Ross</u>, 456 U.S. 798 (1982) in support of their arguments. In <u>Ross</u>, the Supreme Court held that if "probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." <u>Id.</u> at 825. Here, the odor of marijuana provided probable cause for the subsequent search. In addition, Detective Schlueter very quickly discovered a sock concealed behind carpeting on the console that appeared to contain narcotics. The discovery of the suspected narcotics also provided additional probable cause to extend the search to other areas of Defendant's car. See <u>United States v. Neumann</u>, 183 F.3d 753, 756 (8th Cir. 1999) (police officer's "detection of the smell of burnt marijuana while he was conducting the search for an open container gave him probable cause to search the entire vehicle for drugs").

16

As the Eighth Circuit has held, "[a] search of every part of the vehicle that might contain contraband was authorized, because drug traffickers are known to stow contraband in secret compartments." McCarty, 612 F.3d at 1026. Because the search of Defendant's car was supported by probable cause, Detective Schlueter was permitted to search every part of the vehicle. Accordingly, the Court recommends denial of the Motion to Suppress the evidence contained in Defendant's vehicle.

   3. Search of 1615 Jackson Lane

As noted above, Defendant provided no legal authority (beyond authority related to the traffic stop) supporting a motion to suppress evidence seized from 1615 Jackson Lane, Defendant's house. To the extent Defendant relies on the unlawfulness of the traffic stop, the Court concluded above that the credible evidence supports a determination that Detective Schlueter had a reasonable basis to stop Defendant's car for a traffic violation and conduct a search because of the odor of marijuana and the initial discovery of narcotics in the sock.

With respect to assertions of coerced consent (contained in the Motion but not in the Consolidated Memorandum in support or otherwise), in addition to a lack of legal support, the factual record does not provide a basis for a finding of coerced consent to search 1615 Jackson. At the initial stop, Defendant's wife had the presence of mind to both record her interactions with Detective Schlueter and ask relevant questions regarding the stop. At the Florissant police station, law enforcement provided Defendant's wife with Miranda warnings and Defendant's wife signed a consent to search the residence. Once at the residence, Defendant's wife unlocked the door and allowed a thorough search. There was no credible evidence presented suggesting that Defendant's wife was coerced into signing a consent to search. See e.g., United States v. Esquivias 416 F.3d 696, 700 (8th Cir. 2005). Accordingly, to the extent Defendant adequately

17

raises issues regarding the search of his house, the Court recommends denial of the motion to suppress items seized from 1615 Jackson Lane.

### B. Motion to Suppress Statements

Defendant devotes one page of his twenty-four page post-hearing memorandum to argument in support of his Motion to Suppress Statements. The gist of his argument appears to be that his confession was "tainted fruit" or "poisonous fruit" induced by a confrontation with illegally-seized evidence (from his car) or as Defendant claims "[t]he illegal seizure and subsequent search spreads like an oil slick in the Bay of Mexico and pollutes everything it comes in contact with, including every statement made by Diante Turman." [ECF No. 55].

"Verbal statements obtained as a result of a Fourth Amendment violation are as much subject to the exclusionary rule as are items of physical evidence discovered during an illegal search." United States v. Craig, 630 F.3d 717, 722 (8th Cir. 2011) (quoting United States v. Yousif, 308 F.3d 820, 832 (8th Cir. 2002)); see also Wong Sun v. United States, 371 U.S. 471, 485-86 (1963) (statement derived from unlawful arrest may be fruit of the poisonous tree). Because here the Court concludes that the traffic stop and search of Defendant's vehicle did not violate Defendant's Fourth Amendment rights, Defendant's subsequent statements do not constitute fruit of the poisonous tree.

To the extent Defendant is contending that his statements were coerced, the Government contends that the record does not support suppression of Defendant's statements. More specifically, the Government contends that: "[t]here is no evidence to suggest that during the interviews at the Florissant Police Department after Defendant's arrest that the detectives in any way coerced Defendant to waive his rights and make a statement, or made any promises to Defendant in exchange for his waiver and statement."

Due process imposes on a federal court a duty to ascertain the voluntariness of a defendant's confession whether the confession arises out of "'inherently coercive'" police conduct or under circumstances suggesting "the confession is unlikely to have been the product of a free and rational will." Miller v. Fenton, 474 U.S. 104, 110 (1985) (citing Ashcraft v. Tennessee, 322 U.S. 143, 154 (1944) for first quotation and Mincey v. Arizona, 437 U.S. 385, 401 (1978) for second quotation). There is no "talismanic definition of 'voluntariness,'" and a court must determine whether a statement was voluntary by looking at the totality of the circumstances. Schneckloth v. Bustamonte, 412 U.S. 218, 224-25 (1973). See also United States v. Williams, 793 F.3d 957, 962 (8th Cir. 2015) ("To determine whether a statement is voluntary [the Court] examine[s] the totality of the circumstances…."). Furthermore, the Supreme Court has explained that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'…." Colorado v. Connelly, 479 U.S. 157, 167 (1986). See also United States v. Galceran, 301 F.3d 927, 931 (8th Cir. 2002); United States v. Robinson, 20 F.3d 320, 322 (8th Cir. 1994). In short, "[a] statement is involuntary when it [is] extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." United States v. LeBrun, 363 F.3d 715, 724 (8th Cir. 2004).

It is well-settled that a valid waiver of rights must be "knowing and intelligent." Miranda v. Arizona, 384 U.S. 436 (1966). Evidence that an accused was "threatened, tricked or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege." Id. at 476. To determine whether a defendant has validly waived his Miranda rights, a court engages in a two-step inquiry: "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion,

19

or deception." Moran v. Burbine, 475 U.S. 412, 421 (1986). "Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Id.

The record supports a conclusion that law enforcement administered Defendant his Miranda warnings multiple times and he thereafter willingly spoke to officers. Defendant admitted to possession of narcotics and firearms. Defendant requested to speak with DEA agents and voluntarily spoke to them. Defendant voluntarily provided a recorded statement. There is absolutely no evidence that Defendant's statements were extracted by threats, violence or express or implied promises sufficient to overbear Defendant's will. Accordingly, the Court recommends denial of Defendant's motion to suppress statements.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant's Motions to Suppress Physical Evidence [ECF No. 31] and Statements [ECF No. 30] be **DENIED**.

The parties are advised that they have **fourteen (14) days** in which to file written objections to this Recommendation pursuant to 28 U.S.C. Section 636(b)(1). Failure to file timely objections may result in waiver of the right to appeal questions of fact.

This matter is set for trial before the Honorable Stephen N. Limbaugh, Jr., United States District Judge, on **October 2, 2019** at **2:40 p.m.**

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 13th day of August, 2019